```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION
```

HUBERT VAN GENT,                )
                                )
          Plaintiff,            )
                                )
     v.                         )    Case No. 4:08CV959 FRB
                                )
SAINT LOUIS COUNTRY CLUB,       )
et al.,                         )
                                )
          Defendants.           )

## MEMORANDUM AND ORDER

Presently before the Court is plaintiff Hubert Van Gent's Motion For Leave To File Third Amended Complaint. (Docket No. 173). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

### I.  Factual Background and Procedural History

Plaintiff Hubert Van Gent ("plaintiff") began his employment with defendant Saint Louis Country Club ("SLCC" or "Club") in 1976 as a maitre'd. He was subsequently elevated to the position of General Manager, and held this position until he resigned in May of 2007.

During his tenure as General Manager of SLCC, plaintiff was one of the highest paid employees of SLCC, and had the authority to hire and fire all non-sports related employees of SLCC. Plaintiff routinely made recommendations regarding salaries, bonuses, and deferred contribution amounts for SLCC employees,

- 1 -

including himself. During plaintiff's tenure as General Manager, there were between 250 and 300 full and part-time employees, and an average of 40-50 full-time employees.

On July 1, 1984, following plaintiff's elevation to General Manager, SLCC and plaintiff entered into an Employment Agreement. (Administrative Record ("A.R.") 0001).[1] Plaintiff negotiated with SLCC for the inclusion of a deferred compensation plan as part of that agreement, which the parties refer to as the "Employment Agreement Plan."[2] The Employment Agreement Plan required the Club to credit a portion of plaintiff's salary to a bookkeeping reserve. (A.R. 0002). Plaintiff negotiated with SLCC for the ability to suggest investments for the Employment Agreement Plan because he felt it was his money. The parties agree that plaintiff requested that his account be managed by defendant William Simpson, a broker, but plaintiff claims that Simpson mismanaged his account since its inception. For twenty years, plaintiff received account statements. Plaintiff alleges that the Employment Agreement does not provide that SLCC is required to follow plaintiff's investment suggestions, and that he in fact suggested very few investments over the years.

---

[1]The Administrative Record, spanning more than 2,500 pages, has been filed by defendants under seal. (Docket Nos. 101-128).

[2]A deferred compensation plan "is an agreement by the employer to pay compensation to employees at a future date. The main purpose of the plan is to defer the payment of taxes." In re IT Group, Inc., 448 F.3d 661, 664 (3rd Cir. 2006) (quoting David J. Cartano, Taxation of Compensation & Benefits § 20.01, at 709 (2004)).

- 2 -

The Employment Agreement contained numerous provisions regarding the Employment Agreement Plan. These included the manner in which the Club was to credit and debit plaintiff's account, plaintiff's right to designate a beneficiary or beneficiaries, the timing and manner in which the funds would be distributed to plaintiff or to his beneficiary or beneficiaries following plaintiff's termination of service, plaintiff's right to suggest investments for his account, a provision that the Club had no duty to fund its obligations under the agreement, the assets from which payments would be made under the agreement, and the statement that a person's rights to receive payments from the Club under the Employment Agreement Plan shall be no greater than the rights of an unsecured creditor of the Club. (A.R. 0002-0005).

On approximately February 1, 1990, the Club executed the St. Louis Country Club Deferred Compensation Plan ("Deferred Compensation Plan"), which provided for retirement benefits, death benefits, and hardship benefits for plaintiff and other Club employee participants. (A.R. 0006-0018). On August 23, 2007, the Club filed a Top-Hat Plan[3] Registration Statement with the United States Department of Labor for both the Deferred Compensation Plan and the Employment Agreement, stating that both were plans

---

[3] A top hat plan is a plan that is unfunded, used by employers to provide "deferred compensation for a select group of management or highly compensated employees," and exempted from certain ERISA requirements that are relevant to plaintiff's claims in the case at bar. 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a); see also Emenegger v. Bull Moose Tube Co., 197 F.3d 929, 932 n. 6 (8th Cir. 1999)(internal citations omitted).

- 3 -

"maintained for a select group of management or highly compensated employees." (A.R. 67-68).

Plaintiff filed his original complaint on July 1, 2008, alleging various claims arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (also "ERISA"), and state law. Before responsive pleadings were filed, plaintiff filed a First Amended Complaint on October 6, 2008, again alleging claims pursuant to ERISA and state law. Upon the motion of defendants, several counts of plaintiff's First Amended Complaint were dismissed on various grounds, including ERISA preemption. In addition, a motion to compel arbitration, filed by former party-defendants A.G. Edwards & Sons, Inc., Wachovia Securities, L.L.C., and William Simpson, Jr., was granted.

On December 2, 2010, plaintiff sought and was given leave to file a Second Amended Complaint. On December 22, 2010, plaintiff filed a nine-count Second Amended Complaint. Counts I through VIII alleged claims pursuant to ERISA. Count IX alleged civil conspiracy against eight individual defendants, all of whom were named only in Count IX. On April 4, 2011, the eight individual defendants filed a motion to dismiss Count IX, arguing that the civil conspiracy cause of action plaintiff asserted therein was preempted by ERISA. In his responsive pleading, plaintiff stated that he intended to withdraw Count IX, and stated that he also intended to seek leave of court to file a third amended complaint. When ordered by this Court to respond to the substantive arguments presented by the individual defendants in

- 4 -

their motion to dismiss Count IX, plaintiff, on October 12, 2011, filed a response stating that, while he intended to withdraw Count IX, the claims therein were not preempted by ERISA because they were only tangentially related to the administration of the Plans at issue, and because the actions detailed in Count IX caused harm separate from the claims alleged in the Second Amended Complaint's ERISA counts.  At no time did plaintiff argue that the Employment Agreement Plan was not governed by ERISA.  In fact, throughout this litigation, plaintiff has proceeded under the theory that the Employment Agreement Plan and the Deferred Compensation Plan are governed by ERISA.  Based upon the submissions and representations of the parties, this Court granted the individual defendants' motion to dismiss Count IX on October 12, 2011.

In January of 2012, plaintiff filed a motion for permission to obtain discovery which, following stipulation between the parties, was granted as to the following issues: whether the plans were top hat plans under ERISA, the manner in which plaintiff's employment relationship with SLCC ended, and the transfer of funds between certain accounts related to the two plans at issue.

On May 4, 2012, the defendants filed motions for summary judgment.  When counsel of record for plaintiff at that time failed to timely respond, this Court entered an order giving counsel until July 23, 2012 to do so.  On that date, plaintiff, proceeding pro se, filed a motion for an extension of time due to counsel's negligence.  A hearing was subsequently held, during which

- 5 -

plaintiff's counsel indicated his intent to file responses to the motions for summary judgment, and this Court entered an order granting counsel until August 10, 2012, to do so. On that date, counsel filed a memorandum, stating that illness prevented him from complying with the Court's order, and stating his intent to withdraw as counsel for plaintiff. This Court entered an order granting plaintiff until September 14, 2012, to respond to the motions for summary judgment either pro se or through new counsel. The following day, present counsel entered an appearance on plaintiff's behalf, and filed timely responses to the motions for summary judgment.

In the Second Amended Complaint, plaintiff alleges that "[t]he deferred compensation portion of the Employment Agreement is an 'employee pension benefit plan' or 'pension plan' as defined pursuant to ERISA Section 3(2)(A)(i) and (ii)" or § 1002(2). (Docket No. 61 at 20). Plaintiff also alleges that he lacked "knowledge and expertise in the structure and characteristics of employee benefit plans," and that the parties had "unequal bargaining power." (Id. at 21). Plaintiff also alleges that SLCC, as Plan Administrator, failed to follow various administrative procedures as required by the Employment Agreement. (Id. at 21-24).

In his Second Amended Complaint, plaintiff alleges that SLCC established an investment account at A.G. Edwards in 1984 for the purpose of funding the Employment Agreement Plan. Plaintiff alleges that this account was liquidated in September of 2005 and

transferred to a Fidelity Investments account representing the Deferred Compensation Plan's Trust account, account number Z83-296503. Plaintiff alleges that, in late 2005 and early 2006, SLCC consolidated plaintiff's deferred compensation accounts into a single Fidelity Investments account, account number Z83-976601 ("Fidelity account 601"). Plaintiff alleges that in May of 2007, SLCC separated Fidelity account 601 into two separate Fidelity accounts: Fidelity Account 601 and a second Fidelity Account bearing account number Z71-68827 ("Fidelity Account 827").

Plaintiff alleges that Fidelity Account 601 represented the Employment Agreement Plan, while Fidelity Account 827 represented the Deferred Compensation Plan, but that SLCC, by and through its directors and officers, wrongfully commingled funds between and among Fidelity Accounts 601 and 827 such that Fidelity Account 601's value dropped significantly and Fidelity Account 827's value increased significantly. Plaintiff alleges that, in May of 2009, SLCC, by and through its directors and officers, removed $30,000.00 from Fidelity Account 827 and closed Fidelity account 601, leaving approximately $60,000.00 unaccounted for. Plaintiff also alleges that, in April of 2010, SLCC, by and through its directors and officers, removed approximately $14,000.00 from Fidelity Account 827. The parties dispute which Fidelity Account represents the funds for which Plan.

In Counts I and II of the Second Amended Complaint, plaintiff states claims for benefits under the Deferred Compensation Plan and the Employment Agreement Plan, respectively,

pursuant to 29 U.S.C. § 1132(a)(1)(B). In Counts III through VI, plaintiff proceeds under the civil enforcement section of ERISA, 29 U.S.C. § 1132(a)(2), which allows a participant to bring a civil action for relief under 29 U.S.C. § 1109 for breach of fiduciary duty.

In Count VII, citing 29 U.S.C. § 1140, plaintiff alleges that SLCC, Snowden, Lilly and Wells interfered with his protected ERISA rights by discriminating against him in retaliation for his assertion of his ERISA rights pertaining to the Employment Agreement Plan. Plaintiff alleges that this discrimination took the form of constructive discharge from his position at SLCC, and defendants' failure and refusal to: (1) release certain benefits; (2) provide plaintiff with requested documents and availability of people with information useful to plaintiff; and (3) make timely benefit payments under both plans. In Count VIII plaintiff, proceeding against SLCC, alleges that SLCC, the Plan Administrator, failed to provide information under 29 U.S.C. § 1024, inasmuch as SLCC did not provide a copy of the Summary Plan Description or other documents related to the Employment Agreement Plan or the Deferred Compensation Plan.

On October 24, 2012, plaintiff filed the instant motion, seeking leave to file a third amended complaint, stating that he was seeking to do so "*solely* in response to the Eighth Circuit's decision in Dakota, Minnesota & Eastern Railroad Corporation v. Schieffer, 648 F.3d 935 (8th Cir. 2011)." (Docket No. 173 at 5) (emphasis in original). Focusing exclusively on the Employment

- 8 -

Agreement Plan, plaintiff argues that Schieffer held that a "one-person employment contract is not a plan under ERISA." (Id. at 5). Plaintiff states that the proposed third amended complaint would eliminate Counts II, III (in part), IV, V, VI and VII because those counts were based upon the Employment Agreement Plan which, under Schieffer, is not a plan as defined in ERISA. Plaintiff further states that the third amended complaint would add claims of breach of contract, negligence/gross negligence, and wrongful termination/constructive discharge arising out of the Employment Agreement and the Employment Agreement Plan. Plaintiff also states that he wishes to reassert his previously-dismissed claim for civil conspiracy, thereby re-joining the eight individual defendants who were previously dismissed.

Defendants object to the relief plaintiff seeks in the instant motion. Noting the procedural history of this case, defendants argue that granting the instant motion would essentially allow plaintiff to "press the reset button" and re-start this case from the beginning, abandoning the foundation for the claims he has been asserting for the past four years. (Docket No. 187 at 1) (emphasis omitted). Defendants argue that they would suffer substantial prejudice were plaintiff permitted to file another amended pleading after he has already filed three different complaints, after the parties have briefed and the Court has ruled on two rounds of motions to dismiss, after plaintiff was granted leave to conduct extensive discovery, after defendants provided plaintiff with additional written discovery, conducted depositions

- 9 -

of plaintiff and three SLCC witnesses, filed an Administrative Record of more than 2,500 pages, and filed motions for summary judgment directed to the Second Amended Complaint which is premised on the two plans at issue being governed by ERISA.  Defendants note that they have expended significant time, resources, and effort addressing and defending the ERISA claims that plaintiff has been asserting for four years.  Defendants also contend that plaintiff's proposed amendment would be futile, inasmuch as Schieffer is inapplicable to the Employment Agreement Plan.

**II.  Discussion**

Although leave to amend should be freely granted when justice so requires, Fed. R. Civ. P. 15(a); see also Popp Telecom v. Am. Sharecom, Inc., 210 F.3d 928, 943 (8th Cir. 2000) (internal citations omitted) (leave to amend should be granted absent a good reason for denial), a plaintiff does not have an absolute or automatic right to amend.  Meehan v. United Consumers Club Franchising Corp., 312 F.2d 909, 913 (8th Cir. 2002) (citations omitted).  Good reasons for denial of leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment.  Becker v. Univ. of Neb., 191 F.3d 904, 907-08 (8th Cir. 1999) (quoting Brown v. Wallace, 957 F.2d 564, 566 (8th Cir.1992)).  Courts have considerable discretion in ruling on a motion for leave to amend, and their decisions are reviewed for abuse of discretion.  U.S. ex

- 10 -

rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). For the following reasons, the arguments defendants present in opposition to the instant motion are well-taken.

     A.    Futility of Amendment

Futility is a valid reason for denying leave to amend. Becker, 191 F.3d at 907-08 (internal citation omitted); see also Doe v. School District of the City of Norfolk, 340 F.3d 605, 615-16 (8th Cir. 2003) (permission for leave to amend may be withheld when, inter alia, plaintiff lacks a colorable ground for relief). As defendants assert, Schieffer is inapplicable to the case at bar because this case involves an employee pension benefit plan as defined in 29 U.S.C. § 1002(2), and the Schieffer Court expressly limited its holding to employee welfare benefit plans offering severance benefits, defined in § 1002(1). Schieffer does not provide plaintiff with a colorable ground for relief, and plaintiff's proposed amendment would therefore be futile.

In Schieffer, Kevin Schieffer became the President and Chief Executive Officer of the Dakota, Minnesota & Eastern Railroad ("DM &E") in 1996. 648 F.3d at 936. In 2004, anticipating a change of control, Mr. Schieffer and DM & E entered into an employment agreement to encourage Mr. Schieffer's ongoing employment and provide severance benefits in the event he was terminated without cause. Id. In 2008, facing an imminent merger, DM & E terminated Mr. Schieffer without cause, triggering the employment agreement's severance provision. Id. Disputes arose, and Mr. Schieffer filed a demand for arbitration under the

employment Agreement's arbitration provision. Id. DM & E filed suit to enjoin the arbitration on the grounds of ERISA preemption. Schieffer, 648 F.3d at 936. The district court granted Mr. Schieffer's motion to dismiss on the grounds that the employment agreement was not covered by ERISA and DM & E appealed, arguing that the severance plan was an employee welfare benefit plan under 20 U.S.C. § 1002(1). Id.

In analyzing the case under 29 U.S.C. § 1002(1), the Eighth Circuit noted that the determination of whether a plan was governed by ERISA involved a mixed question of fact and law. The Court expressly held: "[c]onsidering ERISA's statutory language, purpose, and historical context, we conclude that an individual contract providing severance benefits to a single executive employee is not an ERISA employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1)." Id. at 938.

There are two types of plans under ERISA: "employee welfare benefit plans" which provide, inter alia, severance benefits, and "employee pension benefit plans" that provide retirement income. ERISA defines each plan separately:

> (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit

- 12 -

>described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
>
>(2)(A) Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
>
>>(i) provides retirement income to employees, or
>>
>>(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution.
>
>29 U.S.C.A. § 1002.

As defendants correctly note, courts analyze employee welfare benefit plans offering severance benefits differently than employee pension benefit plans. See <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1, 7 n. 5 (1987) (addressing the uncertainty of the ERISA status of such plans given the lack of an ongoing administrative scheme, and explaining how severance benefits fall within the definition of an employee welfare benefit plan). Other courts have rejected the argument that case law involving employee welfare benefits/severance benefits applies equally to cases

involving employee pension benefits. See Robbins v. Friedman Agency, Inc., 760 F. Supp. 2d 564, 567 (E.D. Va. 2010) (rejecting the argument that Fort Halifax should be applied to decide that the single-participant deferred compensation portion of an employment agreement was not an ERISA pension benefit plan, noting that Fort Halifax was "inapposite here, where there is no dispute over severance benefits.")

In Schieffer, the Court analyzed only a severance plan under the definition of an "employee welfare benefit plan" of 29 U.S.C. § 1002(1), and expressly limited its holding to employee welfare benefit plans offering severance benefits. Schieffer is inapplicable to the case at bar, which does not involve a dispute over severance benefits. In the instant motion, plaintiff emphasizes that he is seeking leave to file a third amended complaint solely in response to Schieffer. As Schieffer is inapposite to the case at bar, it provides no support for the relief plaintiff seeks in his motion. Permission for leave to amend may be withheld when such amendment would be futile. Doe, 340 F.3d at 615-16.

B.   Undue Prejudice and Delay

Permission for leave to amend may be properly denied where, inter alia, it would cause undue prejudice to the opposing party. Popp Telecom, 210 F.3d at 943. In the case at bar, review of this Court's docket sheet shows that the defendants' characterization of the procedural history of this case as "long and tortured" (Docket No. 187 at 7) is dramatic, but not

- 14 -

inaccurate.  Defendants have expended significant time, resources and effort in addressing and responding to the ERISA claims that plaintiff asserted in his original complaint and all subsequent amendments thereto.  It is also evident that defendants have dutifully attempted to move this case forward since its inception. Defendants have responded to plaintiff's various complaints and motions; they have filed motions and supporting memoranda of their own, including motions for summary judgment; they have engaged in significant discovery, including exchanging written discovery and deposing plaintiff and other witnesses; and endured repeated instances of plaintiff's failure to timely respond to their motions for summary judgment.  As defendants argue, plaintiff's proposed third amended complaint would unravel most of the work they have done thus far to resolve plaintiff's claims.  Undue prejudice is one good reason justifying denial of leave to amend.  Popp Telecom, 210 F.3d at 943.

Undue delay can also justify denial of leave to amend. Popp Telecom, 210 F.3d at 943.  Schieffer was filed on August 11, 2011.  Count IX of the Second Amended Complaint (the only count alleged against the eight individual defendants whom plaintiff now seeks to re-join) was dismissed on October 12, 2011.  Plaintiff did not mention Schieffer before the Court entered its Memorandum and Order dismissing Count IX, nor did he attempt any remedial action, such as filing a motion for reconsideration based upon Schieffer, after that Memorandum and Order was filed.  Plaintiff failed to mention Schieffer during the October 21, 2011 status conference, or

- 15 -

when the parties filed a proposed Joint Scheduling Plan on October 28, 2011 and an Amended Joint Scheduling Plan on December 2, 2011, which included briefing schedules for dispositive motions and a trial date.  As defendants assert, and as plaintiff should have known, plaintiff's proposed third amended complaint would change the majority of plaintiff's theory of this case, would render moot much of the work done thus far by both sides, would re-join the eight individual defendants, and would essentially make it impossible to adhere to the briefing schedules and trial setting. Plaintiff offers no good reason for why he delayed filing the instant motion nearly fifteen months after the filing of the case upon which he states he solely relies, and examination of the record fails to reveal a logical explanation.  Undue delay is one good reason to deny permission for leave to amend.  Popp Telecom, 210 F.3d at 943.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff Hubert Van Gent's Motion For Leave To File Third Amended Complaint (Docket No. 173) is denied.

**IT IS FURTHER ORDERED** that defendants' request for attorney's fees is denied at this time.

*Frederick R. Buckles*
_____
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of November, 2013.